**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID FREIFELD, NITAYA MCGEE, and HANNAH SMITH, on behalf of themselves and all others similarly situated, | ) | |
| Plaintiffs, | ) | No. 25-cv-9984 |
| v. | ) | Judge April M. Perry |
| EPSILON DATA MANAGEMENT, LLC, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

David Freifeld, Nitaya McGee and Hannah Smith (collectively, "Plaintiffs") filed suit on behalf of themselves and a putative class against Epsilon Data Management, LLC ("Defendant"). Doc. 1. Plaintiffs allege that Defendant embedded tracking tools on websites and apps to collect data cataloguing their internet activity without Plaintiffs' knowledge or consent. Defendant moves to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 8. For the reasons stated below, Defendant's motion is granted in part and denied in part.

## BACKGROUND[1]

Defendant is an advertising and software company registered as a "data broker" in California. Doc. 1 ¶ 1. Under California law, a "data broker" is a business that knowingly collects and sells to third parties the personal information of consumers with whom the business does not have a direct relationship. *Id.* ¶ 23. Defendant advertises that it has a database of

[1] The facts are drawn from allegations in Plaintiff's complaint, which for the purposes of this motion the Court accepts as true, drawing all reasonable inferences in Plaintiff's favor. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

profiles for 250 million United States consumers. *Id.* ¶ 57. Defendant states that these profiles allow it to "see a person behind the numbers" and can identify an individual with a description as specific as a "34-year-old married female with two children who is active in yoga, Pilates, and running … tries different organic diet plans … has allergies and high blood pressure … [and] a household income of $125K-150K." *Id.* ¶ 92. Defendant sells its consumer profiles to internet advertisers through a process called "real-time bidding," an instantaneous auction that determines which internet advertisements will be displayed to consumers on a webpage that they visit. *Id.* ¶¶ 35, 53. Internet advertisers pay Defendant based on the amount of information Defendant can provide about a consumer to allow the advertisers to better target their communications. *Id.* ¶ 53

Defendant builds its consumer profiles through a number of "tracking tools" designed to intercept and transmit a consumer's personal information. *Id.* ¶ 67. Such tracking tools include "cookies," which are text files placed on a consumer's web browser to track their activity across different websites, and tracking "pixels," which sync a consumer's unique identifier with third-parties on websites to allow the sharing of data by multiple third parties. *Id.* ¶¶ 52, 68.

According to the complaint, Plaintiff Freifeld, a resident of Illinois, and Plaintiff McGee, a resident of California, visited the Walgreens website and communicated to Walgreens information concerning their prescriptions. *Id.* ¶¶ 127, 138. The Walgreens website contained Defendant's tracking tools and Defendant used these tools to collect information about Plaintiffs. *Id.* ¶¶ 129-130. The information collected included what pages of the Walgreens website Plaintiffs visited, as well as Plaintiffs' later web browsing activity. *Id.* ¶¶ 129-133, 139-141. With respect to Plaintiff Smith, Defendant used its tracking tools to log Smith's web activity from March 2025 to June 2025, collecting information about numerous websites Smith visited,

including her bank. *Id.* ¶ 148. Defendant also tracked specific streaming content that Smith had viewed on websites and a list of confirmed purchases by Smith including the date of the first and last purchase on a site. *Id.* ¶¶ 150-151. Defendant's tracking activities were unknown to Plaintiffs. *Id.* ¶ 107.

Based on these allegations, Plaintiffs bring claims for violations of the Electronic Communications Privacy Act ("ECPA"), California Invasion of Privacy Act ("CIPA"), California Unfair Competition Law, Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and Illinois Eavesdropping Statute, and common law claims for invasion of privacy for intrusion upon seclusion and publication of private facts, unjust enrichment, as well as a claim for invasion of privacy under California's constitution.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, a plaintiff need only include "a short and plain statement of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Wiretapping Claims (Counts I & V)

The Court begins with Count I, which alleges a claim of federal wiretapping under the ECPA, and Count V, which alleges a claim of wiretapping under Section 631 of the CIPA. The framework for analyzing wiretapping claims under the ECPA and Section 631 of the CIPA is essentially the same, so the Court considers the plausibility of these claims together. *See Nguyen v. Abbott Lab'ys, Inc.*, No. 24-CV-8289, 2026 WL 579206, at *6 (N.D. Ill. Mar. 2, 2026). Under the ECPA, to state a claim a plaintiff must plausibly allege that a defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *3 (N.D. Ill. Feb. 21, 2025). There is also an exception for liability, known as the party exception rule, whereby

> [i]t shall not be unlawful ... to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act[.]

18 U.S.C. § 2511(2)(d). In other words, liability does not extend to individuals who record their own communications, even if the other participants in that communication did not authorize the recording, so long as the recording is not made for the purpose of committing another crime or tort.

Defendant first argues that Plaintiffs' wiretapping claims fail based upon the party exception rule, because Defendant was a party to the communications at issue. Before proceeding to the legal merits of this argument, a brief technical detour is required. When an individual visits a website, they trigger a "GET request," which is a communication between the

individual's web browser and the website. *See generally* Doc. 1 at ¶¶ 47-53, 68, 72, 191. If an advertising tracker is embedded on the website, the advertiser recognizes the GET request and immediately triggers a second, duplicate GET request from the individual's web browser to the advertiser. *Id.*[2] The legal merits of Defendant's claim to be a party to the communication thus turns on whether one considers the first GET request to be the relevant communication, or the second GET request.

The Third Circuit has considered this question and concluded that the second GET request controls. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142 (3d Cir. 2015) ("[T]he operative allegations of the complaint support only the conclusion that the defendants acquired the plaintiffs' internet history information by way of GET requests that the plaintiffs sent directly to the defendants…"). Specifically, the Third Circuit noted that because the consumer's web browser communicates directly with the tracking company with respect to the second GET request, the tracking company was an intended recipient and the party exception applied. *Id.*

The Ninth Circuit disagrees. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) (holding that "simultaneous, unknown duplication and communication of GET requests do[es] not exempt a defendant from liability under the party exception.").[3] According to the Ninth Circuit, when computer code automatically directs a communication to

---

[2] The complaint does not do a stellar job describing the technical details behind the GET requests, and it appears that Plaintiffs do not know the specific ways in which Defendant's tracking tools operate. *See* Doc. 1 ¶ 70 ("The full scale of [Defendant's] tracking efforts using cookies is known only to [Defendant]"). Defendant seems to agree that this is the general way its tracking tools function, Doc. 9 at 10, and given that federal court does not require fact pleading, the descriptions are enough to survive a motion to dismiss.

[3] Any reference to *In re Facebook* is conspicuously absent from Defendant's briefs. Defendant has thus provided no argument as to why its preferred interpretation of the party exception rule is more persuasive.

an additional third-party, the third-party should not be considered a party to the communication, because unauthorized duplication and forwarding of communications is precisely what the ECPA was designed to prevent. *Id.* at 607-08. Notably, the Ninth Circuit found support for its position from a Seventh Circuit case involving the ECPA, *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010). In *Szymuszkiewicz*, the Seventh Circuit affirmed the conviction of a defendant who had tampered with his supervisor's email system so that emails were automatically forwarded from the supervisor's inbox to the defendant's computer. *Id.* Although the defendant in *Szymuskiewciz* did not raise a party exception defense, the Court had no trouble finding that "programming a computer to copy the contents it sends along" is an interception for the purposes of the ECPA. *Id.* at 706.

This Court is persuaded by the approach of the Ninth Circuit and finds that the party exception rule does not apply to Defendant. The ECPA was drafted due to the advent of new technology allowing "overzealous law enforcement agencies, industrial spies, and private parties" to intercept the personal communications of others. S. Rep. 99-541, 1986 WL 31929 at * 3. One hypothetical example considered by the Senate was that of law enforcement recording a meeting held by others, and the Senate noted that "intercepting the audio portion of the meeting" would constitute a violation of the ECPA. *Id*. at 16-17. This is a non-controversial concept: law enforcement cannot place recording devices in private areas. Moreover, no one would countenance the argument that a law enforcement officer was really a party to the conversation just because he placed a bug in the room and sent the recording to himself. Similarly, no serious argument could be made that law enforcement would be a "party" to an email if they hacked into an e-mail account and caused all e-mail communications of a suspect to be sent directly to law enforcement. So too here: that Defendant allegedly caused Plaintiff's computer to send outgoing

communications intended for a website to also be sent to Defendant does not exculpate Defendant. *See Vasil v. Kiip, Inc.*, No. 16-CV-09937, 2018 WL 1156328, at *7 (N.D. Ill. Mar. 5, 2018) ("[D]eclaring direct recipients to be parties to a communication would render permissible the most common methods of intrusion, allowing the exception to swallow the rule."). For these reasons, the Court does not consider Defendant to be a party to the communication that it caused to be duplicated and sent to itself.

Defendant also argues that Plaintiffs have not properly alleged that "contents" of communications were intercepted. With respect to metadata like URLs, there is a difference between metadata that provide "basic identification and address information," and metadata that disclose a "search term or similar communication made by the user." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023). While the former constitutes addressing information, the latter qualifies as "content" for purposes of the ECPA. *See id.*; *see also Google*, 806 F.3d at 137 ("URLs may be dialing, routing, addressing, or signaling information, but only when they are performing such a function. If … [a] URL is instead part of the substantive information conveyed to the recipient, then by definition it is 'content.'"). After all, URLs can reveal website users' personal interests, queries, and habits. *See Krzyzek v. OpenX Techs.*, *Inc.*, 817 F. Supp. 3d 857, 867 (N.D. Cal. 2026). Here, the complaint alleges that Defendant obtained Plaintiffs' web browsing activity, purchases, and a list of content streamed, *see, e.g.*, Doc. 1 ¶¶ 148-150, which is more than sufficient at this stage of proceedings to plausibly allege that the contents of communications were intercepted. Therefore, the Court determines that Plaintiffs have sufficiently alleged "content."

Finally, Defendant argues that Plaintiffs have failed to allege an "in-transit" interception of a communication. In *Szymuszkiewicz*, the Seventh Circuit acknowledged that "[s]everal

circuits have said that, to violate § 2511, an interception must be 'contemporaneous' with the communication." 622 F.3d at 705. The Court did not adopt that requirement expressly, but instead explained that the "contemporaneous" requirement did not mean, as the defendant in that case argued, that an email communication had to be intercepted "in flight" to violate the Act. *Id.* at 706. The court went on to find that an automatic email forwarding rule constituted an interception because it was essentially contemporaneous. *Id.* (noting that there was "no more than an eyeblink in between" the email being sent and forwarded). Plaintiffs here have alleged just such a real time interception. *See* Doc. 1 ¶ 240 ("Epsilon's Tracking Tools intercept and transmit user's actions and communications contemporaneously as the user initiates each communication."). The Court finds these allegations plausibly constitute an interception. *See also In re Pharmatrak, Inc.*, 329 F.3d 9, 22 (1st Cir. 2003) (finding "[s]eparate, but simultaneous and identical, communications satisfy even the strictest real-time requirement" under the ECPA).

As Defendant raises no other challenges to the wiretapping claims, Defendant's motion to dismiss Counts I and V is denied.

## II. Illinois Eavesdropping Claim (Count IX)

Count IX alleges a claim under 720 ILCS 5/14-2(a)(3) of the Illinois Eavesdropping Statute.[4] Section 2(a)(3) prohibits surreptitious interception and recording of "any private electronic communication [to] which [the eavesdropper] is not a party unless he or she does so with the consent of all parties to the private electronic communication." 720 ILCS 5/14-2(a)(3). Repeating its arguments brought with respect to the ECPA claim, Defendant argues that the

---

[4] Plaintiffs clarify in their response brief that they are bringing a claim solely under 720 ILCS 5/14-2(a)(3). *See* Doc. 16 at 10. Defendant's argument that the claim fails because the alleged communications were not oral or private as required by Section (2)(a)(1) and Section (2)(a)(2), Doc. 9 at 14, is therefore moot.

Eavesdropping Statute does not cover Plaintiff's claims because Defendant was a party to any alleged communication. However, given that Courts consider "party" under the ECPA and Illinois Eavesdropping Act to be equivalent, the Court finds that Defendant was not a party for the same reasons as previously discussed. *See, e.g.*, *Vasil*, 2018 WL 1156328, at *6 (relying on decisions involving the ECPA to determine party status under Illinois Eavesdropping Statute); *see also Zak v. Bose Corp*., No. 17-CV-02928, 2019 WL 1437909, at *5 (N.D. Ill. Mar. 31, 2019) (holding that defendant was party under both the ECPA and Illinois Eavesdropping Statute). Therefore, the motion to dismiss Count IX is denied.

**III. Invasion of Privacy and Unjust Enrichment Claims (Counts II, III, & IV)**

In Counts II, III, and IV, Plaintiffs bring claims for invasions of privacy and unjust enrichment. Defendant argues that the complaint inadequately pleads these counts because it does not specify which state law or laws apply. However, the Seventh Circuit has repeatedly held that a complaint does not need to plead legal theories. *See, e.g.*, *Frank v. Walker*, 819 F.3d 384, 387 (7th Cir. 2016) ("A complaint must narrate a plausible grievance; it need not set out a legal theory or cite authority."); *Newson v. Superior Ct. of Pima Cnty.*, 784 F. App'x 964, 965 (7th Cir. 2019) ("To state a claim, a plaintiff need only narrate his claim with sufficient clarity to put the defendants on notice of its basis; he need not present legal theories at all"). In any event, Plaintiffs clarified in their response brief that they bring claims under Illinois and California common law, the states where the named Plaintiffs reside, which Defendant should have been able to guess. *See In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*, 718 F. Supp. 3d 800, 824 (N.D. Ill. 2024) ("Plaintiffs have, however, identified the state in which each Plaintiff resides, and [Defendant] could have made arguments for dismissal based on

these states' laws."). The Court will not grant dismissal of the claims on this basis.

The only specific argument Defendant raises about these claims is that Illinois and California do not recognize standalone torts for unjust enrichment. It is true that under Illinois law unjust enrichment is not a separate cause of action. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011). That said, "[i]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim" and will "stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Since Plaintiff Freifeld alleges other tort claims that survive the motion to dismiss, he can proceed on an unjust enrichment theory as well. Meanwhile, the Ninth Circuit and California Supreme Court have construed California law to permit claims for unjust enrichment. *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016); *Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.*, 353 P.3d 319, 332 (Cal. 2015). For example, courts applying California law have permitted unjust enrichment claims based on allegations of unlawful profit from the collection of internet activity. *See, e.g.*, *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1095 (N.D. Cal. 2025). For these reasons, Plaintiff McGee's and Smith's unjust enrichment claims survive as well. The motion to dismiss Counts II, III, and IV is denied.[5]

## IV. CIPA (§ 638.51) Claim (Count VI)

Count VI raises a claim under Section 638.51(a) of the CIPA, which prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a

[5] Defendant raises numerous arguments for dismissal for the first time in its reply brief including attacking the sufficiency of the allegations relating to publication of private facts and intrusion upon seclusion. *See* Doc. 17 at 6-8. However, arguments raised for the first time in a reply brief are waived. *See, e.g.*, *McCarty v. Menard, Inc.*, 927 F.3d 468, 472, n.2 (7th Cir. 2019); *Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013).

court order." Cal. Penal Code § 638.51(a). The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." *Id.* § 638.50(b).

Defendant argues that the internet software alleged in the complaint is not covered by the statute. However, "[t]he overwhelming majority of courts that have considered this question have similarly concluded that third-party internet trackers meet the technical requirements of a pen register under CIPA." *Harris v. iHeartMedia, Inc.*, No. 25-CV-06038, 2026 WL 247875, at *3 (N.D. Cal. Jan. 29, 2026) (collecting cases). Defendants mainly rely on *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3-4 (Cal. Super. Ct. Jan. 27, 2025), which limited California's pen register statute to telephone numbers.[6] However, *Sanchez* is an outlier. *Compare Xu v. Reuters News & Media, Inc.*, 25-CV-459918, 2025 WL 3035016, at *4 (Cal. Super. Ct. Oct. 24, 2025). The Court finds that an internet tracker that collects IP addresses meets the plain language definition of "pen register." *See Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024) ("The IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information."); *see also Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1094 (N.D. Cal. 2025) ("[T]he Court respectfully disagrees with the California Superior Court's conclusion in *Sanchez*, which focused its analysis on the legislative history of the CIPA rather than on the expansive, plain language of Section 638.50."). The motion to dismiss Count

[6] The other cases cited by Defendant do not support its assertion that the statute does not cover internet trackers. In *Aviles v. Livecamp*, the court determined a plaintiff failed to allege a pen register or trap and trace device because plaintiff did not allege that any outgoing addressing information was being collected. 2025 WL 487196, at *3 (Cal. Super. Ct. Jan. 28, 2025). And the court in *Gabrielli v. Insider, Inc.*, did not address pen registers at all because it found that the plaintiff lacked standing. 2025 WL 522515, at *8-9 (S.D.N.Y. Feb. 18, 2025).

VI is denied.

**V. California Unfair Competition Law (Count VII)**

Count VII alleges a claim under California's Unfair Competition Law ("UCL"). To have standing to bring a claim under the UCL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to quantify as injury in fact, *i.e.*, economic injury, and (2) show that the economic injury was the result of, *i.e.*, caused by, the unfair business practice." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011). Defendant argues that the loss of personal data alleged by Plaintiffs does not constitute an economic injury for purposes of the UCL. Courts interpreting California law have split on whether the diminution in value of personal information is sufficient. *See Turner v. Google LLC*, 5:23-cv-03101, 2024 WL 4933345, at *6 (N.D. Cal. Dec. 2, 2024). However, courts have recognized Plaintiffs' other economic injury theories such as privacy harms for purposes of the UCL. *See In re Tiktok, Inc., Minor Priv. Litig.*, MDL 3144-GW-RAOx, 2025 WL 3628598, at *20 (C.D. Cal. Nov. 5, 2025) (finding that "personal information has an economic value, as evinced by an asserted market for it, such that privacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL."). Therefore, the Court need not reach today whether loss of personal data alone is sufficient to support a UCL claim and Defendant's motion to dismiss Count VII is denied.

**VI. Invasion of Privacy under California Constitution (Count VIII)**

Count VIII raises claims for violations of Plaintiffs' rights to privacy under the California Constitution. In evaluating such a claim, courts consider whether plaintiffs have shown "(1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is so serious as to constitute an egregious breach of the social

norms such that the breach is highly offensive." *In re Facebook*, 956 F.3d at 601 (cleaned up). A reasonable expectation of privacy may be shown where a defendant gained "unwanted access to data by electronic or other covert means." *Id.* Relevant factors include "the customs, practices, and circumstances surrounding" the data collection. *Id.*

Defendant argues that Plaintiffs have not alleged a reasonable expectation of privacy or a highly offensive intrusion. The Court disagrees, based on the breadth of personal data allegedly collected and the fact that it was collected by an entity that Plaintiffs had no idea existed. The cases that Defendant cites pertain to a more limited set of data than at issue in this case, such as email addresses, phone numbers, usernames, or device identifiers. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022). Here, Plaintiffs have alleged the collection of significantly more private information such as number of children, income level and banking information, health conditions, and history of purchases and streaming of content in addition to the ability to tie that information to a specific individual. Defendant asserts that Plaintiffs have not alleged that it collects health information but the complaint in fact does so. *See* Doc. 1 ¶¶ 89, 92, 149. It is also reasonable to infer that capturing purchase information from websites like Walgreens would result in data that could reveal health conditions. Courts interpreting the California constitution have consistently found allegations of this type to suffice for the purposes of a motion to dismiss. *See In re Facebook,* 956 F.3d at 606 ("Plaintiffs' allegations of surreptitious data collection when individuals were not using Facebook are sufficient to survive a dismissal motion on the issue."); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023). For these reasons, the motion to dismiss Count VIII is denied.

**VII. ICFA Claim (Count X)**

Finally, Count X alleges a claim under the ICFA. In order to state a claim under the

ICFA, a plaintiff must plead that "(1) the defendant committed a deceptive or unfair act, (2) with the intent that others rely on the deception, (3) that the act occurred in the course of trade or commerce, and (4) it caused actual damages." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025). Plaintiffs' ICFA claim suffers two major deficiencies. First, Plaintiffs have not properly alleged a deceptive act. Plaintiffs argue that Defendant failed to disclose the material facts related to its data collection to users of the websites in which it embedded its tracking software. However, under the ICFA an omission must be an omission from a communication, rather than a general failure to disclose. *See De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) (holding that "if there has been no communication with the plaintiff, there have been no statements and no omissions.") Specifically, a plaintiff must plead that they "receive[d], directly or indirectly, communication or advertising from the defendant. *Id*. Plaintiffs have not alleged that they received any communications from Defendant. To the contrary, the complaint is based on the premise that Defendant's technology was entirely unknown to consumers. Nor have Plaintiffs demonstrated why representations on websites not operated by Defendant should be attributed to Defendant. The ICFA claim for deceptive acts fails on this basis alone.

Second, the Complaint has not pled damages cognizable under the ICFA related to deceptive or unfair acts or practices. The ICFA only provides remedies for purely economic injuries. *White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 550 (Ill. App. Ct. 2006). Actual damages must be calculable and "measured by the plaintiff's loss." *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 2009). None of the damages alleged by Plaintiffs meet these requirements. A diminution in value of their personal data is not sufficient to allege an actionable harm for the purposes of the ICFA. *See Flores v. Aon Corp.*, 242 N.E.3d 340, 356 (Ill. App. Ct. 2023) (declining to hold that "diminution in the value of personal

information is a specific economic injury under the [ICFA]"). For these reasons, the motion to dismiss Count X is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted as to Count X and is otherwise denied. Plaintiffs are granted leave to amend as it pertains to Count X to the extent that they can do so consistent with this opinion.

Dated: June 15, 2026

April M. Perry

APRIL M. PERRY
United States District Judge